# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 18-CR-301 (NEB/DTS) |
| Plaintiff, | |
| v. | ORDER ON REPORT AND RECOMMENDATION |
| ALONZO PIERRE MINGO, | |
| Defendant. | |

This matter is before the Court on Defendant Alonzo Pierre Mingo's objection to the Report and Recommendation ("R&R") of United States Magistrate Judge David T. Schultz. (ECF Nos. 80, 85.) Judge Schultz recommends denying Mingo's motion to suppress the evidence seized in this case. (ECF No. 32.) The Court has conducted a *de novo* review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b); D. Minn. LR 72.2. Based on that review, the Court accepts the R&R.

The R&R provides a detailed account of the event, which is also reflected in Saint Paul Police Officer Kou Yang's testimony at the suppression hearing, (ECF No. 50 ("Hr'g Tr.")), and in the three body camera videos submitted by the government (Hr'g Tr. Gov. Ex. 1, Ex. 2, Ex. 3 ("Dean Video")). To the extent the facts in the R&R are undisputed, they

are incorporated by reference. The Court will address facts as necessary to rule on Mingo's objections.

**ANALYSIS**

Although Mingo numbers his objections to the R&R 1–10, the objections fall within four distinct categories: (1) challenges to Officer Yang's credibility (Objections 1, 2, 3, 7); (2) challenges to the R&R's characterization of events (Objections 1, 4); (3) objections to the conclusion that there was reasonable suspicion to initiate the stop (Objections 5, 6, 7, 8, 9); and (4) objections to the constitutionality of Officer Dean "lifting" Mingo's jacket (Objection 10). The Court addresses these objections in turn.

### I.     Credibility of Officer Yang

Judge Shultz, who observed Officer Yang while testifying, found his testimony credible. The defendant has objected to this conclusion, so the Court conducts a *de novo* review and draws its own conclusion on Officer Yang's credibility. *See United States v. Jackson-Bey*, No. 17-CR-152(JNE/HB) (1), 2018 WL 2305673, at *1 n.2 (D. Minn. May 21, 2018) (collecting cases). Mingo argues that Officer Yang's testimony at the suppression hearing is not credible because, among other things, Officer Yang did not remember if it was raining, did not remember if the 911 call mentioned the race of the men in the alleyway, did not adequately explain his conclusion that the interactions he observed

were hand-to-hand drug transactions and not handshakes, and did not take any notes or photographs during his nearly two-hour surveillance of Mingo.

The Court has reviewed the testimony of Officer Yang in the context of Mingo's complaints and finds his objection on this ground to be without merit. First, some of the alleged inconsistencies are not inconsistencies at all. Mingo argues that the 911 caller identified the men in the alley as black men dressed all in black. This is supported by Officer Kowalski's account of the event.[1] Officer Yang's testimony that he did not remember the description of the men at the suppression hearing is not inconsistent with the men being identified as black men wearing black. Officer Yang's failure to remember this detail does not make him less credible. The same is true for his failure to remember if it was raining.

Mingo's argument about Officer Yang's conclusion that he saw Mingo and Reed engage in hand-to-hand drug transactions is similarly unavailing. Mingo appears to argue that Officer Yang should have provided more details about how the motions were not handshakes and what made them unique. But it is well established that "law enforcement officials are trained to cull significance from behavior that would appear innocent to the untrained observer." *United States v. Bailey*, 417 F.3d 873, 877 (8th Cir.

---

[1] Mingo attached the relevant police reports to his objections, and the government did not object. The Court need not decide whether the reports are judicially noticeable under Rule 201(b)(2) of the Federal Rules of Evidence because the additional facts contained in the reports do not change the Court's conclusions.

2005) (citation and quotation marks omitted). Officer Yang had more than nine years of experience as a police officer and two-and-a-half years working with the gang unit. His testimony that the movements were not handshakes does not call his credibility into question.

Finally, Mingo argues that Officer Yang is not credible because he did not write down any of his observations until after Mingo's arrest. In an attempt to bolster this argument, Mingo subpoenaed his phone records and the surveillance camera video for the BP gas station. The suppression hearing in front of Judge Schultz was reopened based on Mingo's contention that he could show that he was not at the BP gas station the entire time Officer Yang placed him there. The evidence Mingo submitted did nothing but corroborate Officer Yang's testimony. (Hr'g Tr. Def. Ex. 3 (Affidavit of forensics examiner hired by Mingo swearing that Mingo's cell phone location data placed him near the BP gas station between 10 PM and 11 PM on October 25, 2018); Hr'g Tr. Def. Ex. 4 (Low-quality surveillance video from the BP gas station beginning at 11:09 PM showing two cars parked at the far end of the gas station with two figures (presumably Mingo and Reed) milling around them for approximately ten minutes before police arrive).) Although it may have been useful for Officer Yang to have written down his observations, his failure to do so does not alter his credibility. *See, e.g.*, *United States v. Mendoza*, 677 F.3d 822, 828 (8th Cir. 2012) ("The mere fact [that] an incident report omits certain details is not sufficient to render the officer's testimony concerning the underlying

action facially implausible.") Mingo's own evidence corroborates Officer Yang's testimony that he saw Mingo at the gas station over an extended period. (*See e.g.*, Hr'g Tr. Def. Exs. 3, 4 (indicating that Mingo was at the gas station for over an hour, consistent with Officer Yang's testimony).) Mingo's objection on this basis is overruled.

## II. Characterizations by the R&R

Mingo next objects to the R&R's description of the events leading up to his arrest. He specifically objects to the R&R's failure to recite that Officers Kowalski and Cajacob observed someone running in the alleyway that "matched" the description in the 911 call, and its failure to construe Officer Dean's grabbing of his coat as "lifting" it. The Court does not reach whether the R&R's characterization of the events is accurate because it has conducted *de novo* review of the record and those portions of the R&R. Thus, the Court overrules Mingo's objections on this ground because they are irrelevant.

## III. Reasonable Suspicion

Mingo argues that Officer Yang initiated the investigative stop on a "mere hunch," rather than the reasonable suspicion required by law. "A law enforcement officer may detain a person for investigation without probable cause to arrest when the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Hurd*, 785 F.3d 311, 314 (8th Cir. 2015) (citation and quotation marks omitted). The Court looks at the totality of the circumstances to determine "[w]hether the particular facts known to the officer amount to an objective and particularized basis for a

reasonable suspicion of criminal activity." *Id.* (citation and quotation marks omitted). "To be reasonable, the suspicion must be more than an inchoate and unparticularized suspicion or hunch." *Id.* (citation and quotation marks omitted). "However, officers may draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id*. (citation and quotation marks omitted).

The Court, looking at the totality of the circumstances, concludes that the officers had an objective and particularized basis to initiate the stop. Officer Yang's testimony that Mingo was at the BP gas station for nearly two hours at night without pumping gas or going inside and his observation that Mingo may have engaged in hand-to-hand drug transactions provide an objective and particularized basis for a reasonable suspicion of criminal activity. These observations, coupled with the officers' knowledge that there had been "an increase in narcotics and weapons activity [at] that specific gas station," are sufficient to justify the stop. (Hr'g Tr. at 10.) *See, e.g.*, *United States v. Bustos-Torres*, 396 F.3d 935, 942–43 (8th Cir. 2005) (finding reasonable suspicion to initiate an investigative stop when officer observed what he believed were two drug sales in an area known as a "hotbed" for drugs).

Mingo's objections that the other circumstances surrounding the stop could not independently establish reasonable suspicion do not change this analysis. He argues that Officer Yang's knowledge that Reed was a felon and the assessment that Mingo was

associated with Reed and the Buick could not independently establish reasonable suspicion. First, the Court does not agree that Mingo standing next to the Buick and Reed for two hours at a gas station is accurately characterized as merely "be[ing] in a public place together." (ECF No. 85 at 5 (citing *United States v. Menard*, 95 F.3d 9, 11–12 (8th Cir. 1996).) Officer Yang testified that he observed both Mingo and Reed engaging in potential hand-to-hand transactions indicative of drug sales, which would provide reasonable suspicion that Reed and Yang were acting together. Second, the fact that no drugs or substantial amounts of cash were recovered is irrelevant. "The determination of whether probable cause [or reasonable suspicion] existed is not to be made with the vision of hindsight, but instead by looking to what the officer reasonably knew at the time." *United States v. Smart*, 393 F.3d 767, 770 (8th Cir. 2005) (alterations in original) (citation omitted). The Court does not believe Officer Yang made an unreasonable assessment based on his experience and observation that Mingo was engaged in drug sales. The fact that this assessment may have been wrong, in hindsight, does not make it unreasonable.

Finally, the Court does not find relevant whether Mingo's Buick was the one reported on the 911 call, or whether Officers Kowalski and Cajacob saw someone matching the description given on the 911 call. These additional considerations do not undermine the conclusion that looking at the totality of the circumstances, there was a reasonable articulable suspicion to initiate the stop. As Judge Schultz noted, Mingo's challenge is the kind of "divide-and-conquer" analysis that the Supreme Court has

repeatedly rejected. *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (overruled in part on separate grounds by [*Davis v. Washington*, 547 U.S. 813, (2006)](#)) (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). Here, "each of the series of acts was perhaps innocent in itself . . . [but,] taken together, they warranted further investigation." *Id.* (citation and quotation marks omitted). The Court thus overrules Mingo's objections on this basis.

IV. **Weapons Search**

Finally, Mingo argues that when Officer Dean lifted his jacket while attempting to perform a protective weapons search, the search turned into an arrest without probable cause. Thus, Mingo argues, his subsequent attempt to escape the officers could not provide probable cause to arrest him.

"While an officer may conduct a limited, warrantless search of a suspect if he has a reasonable, articulable suspicion that the person may be armed and presently dangerous, the scope of such a search must be confined to a search reasonably designed to discover concealed weapons." *United States v. Aquino*, 674 F.3d 918, 923 (8th Cir. 2012) (citation and quotation marks omitted). "[W]here an officer exceeds the permissible scope of *Terry*, the investigatory detention is transformed into an arrest." *Id.* at 924. "[A] *Terry* stop that becomes an arrest must be supported by probable cause." *Id.*

The Court concludes that the officers had a reasonable, articulable suspicion that Mingo may have been armed and presently dangerous and Officer Dean's actions did not transform the *Terry* stop into an arrest. First, the officers were justified in attempting to

perform a protective search for weapons. "Because weapons and violence are frequently associated with drug transactions, it is reasonable for an officer to believe a person may be armed and dangerous when the person is suspected of being involved in a drug transaction." *Bustos-Torres*, 396 F.3d at 943. As discussed above, the officers reasonably believed that Mingo was involved in a drug transaction, and Officer Yang, from experience, knew that "people who deal with drugs often carry firearms." (Hr'g Tr. at 12.) The officers knew there had been "an increase in narcotics and weapons activity [at] that specific gas station." (*Id.* at 10.) Further, the officers had observed what they believed was countersurveillance of the gas station, which posed a safety risk to the officers. (Hr'g Tr. at 49.) Taken together, the officers had a reasonable, articulable suspicion that Mingo may have been armed and presently dangerous.

Second, when an officer conducts a protective weapons search, the search must be the "least intrusive means necessary to protect an officer's safety." *Aquino*, 674 F.3d at 925 (citation and quotation marks omitted). Mingo argues that under *Aquino*, "[s]earch[es] under articles of clothing" without first conducting a pat-down are *per se* unconstitutional. *Id.* The Court does not think *Aquino* reaches that far.[2] Regardless, the Court has reviewed the body camera footage and concludes there was no search *under*

---

[2] In *Aquino*, after the Eighth Circuit found that the specific officer's act of pulling up the pant leg of a suspect who was generally complying with police commands exceeded *Terry*, it clarified "[t]here are situations where concern for an officer's safety may justify by-passing a pat down during an investigatory detention." 674 F.3d at 926.

Mingo's coat. At most, the video suggests that Officer Dean grabbed and pulled—perhaps in an upward manner—at Mingo's jacket in an attempt to stop Mingo from walking away from him after Mingo ignored Officer Dean's request to come closer.[3] (Dean Video at 0:47–0:54.) This does not rise to the level of intrusion that the Eighth Circuit admonished in *Aquino*. In *Aquino*, the officer pulled the suspect's pant leg up high enough to view a "a duct-taped bundle strapped on Aquino's right leg." 674 F.3d at 921. Here, Officer Dean did not raise Mingo's coat in a way that could have revealed a weapon. The video footage shows that he did not lift the coat to show Mingo's waistband or reach into Mingo's unzipped coat pocket. And at the time Mingo was not complying with Officer Dean's request to remain still so that Officer Dean could safely conduct a frisk. In that context, grabbing Mingo's coat did not intrude more than reasonably necessary to attempt to conduct a pat down search. Thus, Officer Dean's actions did not turn the *Terry* stop into an arrest without probable cause.[4]

Because the Court concludes that Officer Dean's actions did not create an invalid *Terry* stop, the Court does not reach Mingo's objection that his flight from an invalid stop

---

[3] Mingo's argument that Officer Dean characterized the event as lifting the coat in his police report does not change the analysis. A police officer's "characterization is not enough, standing alone, to implicate Fourth Amendment protections." *Michigan v. Chesternut*, 486 U.S. 567, 574 (1988). The parties' characterization of the events notwithstanding, the Court must conduct its own constitutional analysis.

[4] Other courts have found more invasive searches do not transform a stop into an arrest when the suspect is not complying with officer commands and the officer has reasonable suspicion that the suspect is armed. *See, e.g.*, *Hurd*, 785 F.3d at 313–15 (finding that officer was justified in reaching into suspect's pocket and feeling a gun when suspect refused to

could not provide probable cause for arrest. Mingo's objections to this part of the R&R are overruled.

The parties do not object to any other aspect of the R&R. The Court determines whether the recommendations are clearly erroneous or contrary to law when no objection has been made. *See* Fed. R. Crim. P. 59; *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (per curiam). Having reviewed those portions of the R&R to which the parties have not objected, the Court finds no clear error.

## CONCLUSION

Based on all the files, records, and proceedings herein, the Court OVERRULES the defendant's objections (ECF No. 85) and ACCEPTS the R&R (ECF No. 80). Accordingly, IT IS HEREBY ORDERED THAT:

1. Defendant Mingo's Motion to Suppress (ECF No. 32) is DENIED.

Dated: March 31, 2020						BY THE COURT:

							s/Nancy E. Brasel
							Nancy E. Brasel
							United States District Judge

---

comply with officer's commands); *Adams v. Williams*, 407 U.S. 143, 144–48 (1972) (concluding that officer acted reasonably when he reached into car window and removed a gun from the suspect's waistband without first conducting a frisk because suspect did not comply with officer commands).